PD-0047-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/22/2015 11:32:56 AM
Accepted 1/28/2015 10:06:08 AM
ABEL ACOSTA
CLERK

IN THE
COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

| | | |
|---|---|---|
| HAROLD L. GRAVES, JR.,<br>    Appellant | §<br>§<br>§ | |
| | § | NO. _____ |
| v. | §<br>§ | |
| THE STATE OF TEXAS,<br>    Appellee | §<br>§<br>§ | |

_____

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**
_____

On Petition for Discretionary Review from the decision of the Court of Appeals for the Sixth Appellate District of Texas, at Texarkana, Texas, in Cause Number 06-13-00233-CR, affirming the Appellant's conviction for the offense of Murder, in Cause No. 1338568R, in the 297th Judicial District Court of Tarrant County, Texas.

DAWN A. MOORE
Texas State Bar No. 00788072
*BOSWELL & MOORE, P.C.*
1504 E. McKinney Street, Suite 200
Denton, Texas  76209
*dawn@boswellandmoore.com*
(940) 382-4711 - *main*
(940) 349-9922 – *fax*

FILED IN
COURT OF CRIMINAL APPEALS

January 28, 2015

ABEL ACOSTA, CLERK

*ATTORNEY FOR APPELLANT*

## SUBJECT INDEX

NAMES OF ALL PARTIES & COUNSEL...................................................... iii

TABLE OF AUTHORITIES ....................................................................... v

STATEMENT REGARDING ORAL ARGUMENT ............................................ 2

STATEMENT OF THE CASE ..................................................................... 2

STATEMENT OF PROCEDURAL HISTORY .................................................. 3

QUESTIONS PRESENTED FOR REVIEW ..................................................... 4

1. Whether the Court of Appeals erred in determining that there was "no evidence" in the record to support a finding that Appellant reasonably believed that the immediate use of deadly force was necessary, and that therefore Appellant was <u>not</u> entitled to any self-defense instruction?  (Court's Opinion at 6).

2. Whether the Court of Appeals erred in determining that the trial court's error in the admission of evidence of extraneous drug dealing offenses allegedly committed by Appellant during the guilt/innocence phase was harmless?  (Court's Opinion at 14).

ARGUMENT................................................................................... 4

CONCLUSION.................................................................................. 16

PRAYER FOR RELIEF........................................................................ 17

CERTIFICATE OF COMPLIANCE........................................................... 18

CERTIFICATE OF SERVICE ................................................................. 18

APPENDIX - OPINION OF THE SIXTH COURT OF APPEALS ............................. 19

## NAMES OF ALL PARTIES AND COUNSEL

The parties to the judgment in this case and their counsel are as follows:

| | |
|---|---|
| HAROLD L. GRAVES, JR., #01881446<br>c/o John Middleton Unit<br>13055 FM 3522<br>Abilene, Texas  79601 | Defendant/Appellant |
| | |
| HON. DANNY D. PITZER<br>SBOT No.  16055700<br>204 N. Mansfield Street<br>Mansfield, Texas  76063<br>(817) 453-3700 – main | Appellant's Trial Counsel |
| | |
| HON. GERARD KARDONSKY<br>SBOT No.  24066607<br>210 n. Park Blvd.<br>Grapevine, Texas  76051<br>(817) 481-1999 – main | Appellant's Trial Counsel |
| | |
| LARRY M. MOORE<br>SBOT No. 14357800<br>4210 West Vickery Blvd.<br>Fort Worth, Texas  76107<br>(817) 338-4800 – main | Appellant's Counsel<br>(former Counsel on appeal) |
| | |
| DAWN A. MOORE<br>SBOT No. 00788072<br>Boswell & Moore, P.C.<br>1504 E. McKinney, Suite 200<br>Denton, Texas  76209<br>(940) 382-4711 – main | Appellant's Counsel<br>(on appeal) |

| | |
|---|---|
| THE STATE OF TEXAS, | Appellee |
| HON. SHAREN WILSON,<br>Tarrant County District Attorney | Appellee's Counsel |
| HON. ANDY PORTER<br>SBOT No. 00788072<br>HON. EDWARD L. WILKINSON<br>SBOT No. 00788072<br>Assistant District Attorneys<br>401 West Belknap Street<br>Fort Worth, Texas 76196<br>(817) 884-1400 – main | Appellee's Counsel<br>(on appeal) |
| HON. JIM HUDSON<br>SBOT No. 24004495<br>HON. LISA CALLAGHAN<br>SBOT No. 01160700<br>Assistant District Attorneys<br>401 West Belknap Street<br>Fort Worth, Texas 76196<br>(817) 884-1400 – main | Appellee's Counsel<br>(at trial) |
| HON. LISA C. McMINN<br>209 W. 14th St., Suite 203<br>P.O. Box 13046<br>Austin, Texas 78711-3046<br>(512) 463-1660 – main | State's Prosecuting Attorney |
| HON. EVERETT YOUNG<br>Former Judge, 297th Judicial District Court<br>401 West Belknap Street, 5th Floor<br>Fort Worth, Texas 76196<br>(817) 884-1906 – main | Trial Judge |

# TABLE OF AUTHORITIES

**Cases**

*Barshaw v. State*, 342 S.W.3d 91  (Tex. Crim. App. 2011)......................................... 14

*Burnett v. State*, 88 S.W.3d 633  (Tex. Crim. App. 2002) ........................................ 14

*Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2011) ............................................ 14

*Haley v. State*, 173 S.W.3d 510 (Tex. Crim. App. 2005)............................................. 13

*Hamel v. State*, 916 S.W.2d 491 (Tex. Crim. App. 1996)..................................... 5,6,7

*Jones v. State,* 544 S.W. 2d 139 (Tex. Crim. App. 1976).............................................5

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1991). ............................. 14

*Motilla v. State*, 78 S.W.3d 352  (Tex. Crim. App. 2002). .......................................... 13

*Sandoval v. State*, 409 S.W. 3d 259 (Tex. App.-Austin 2013, no pet.) .................. 14

*Semaire v. State*, 612 S.W. 2d 528 (Tex. Crim. App. 1981)........................................5

**Statutes, Codes, Rules, Constitutions**

Tex. Penal Code, Section 9.31(b)(1) ........................................................................5

Tex. Penal Code, Section 9.32 ...................................................................................5

Tex. R. App. Proc., Rule 4.1(a) .................................................................................4

Tex. R. App. Proc., Rule 44.2(b) ............................................................................13

Tex. R. App. Proc., Rule 66.3(c) ..............................................................................7

Tex. R. App. Proc., Rule 66.3(f) ..........................................................................7,16

Tex. R. App. Proc., Rule 68.2(a) ..............................................................................4

IN THE
COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

| | | |
|---|---|---|
| HAROLD L. GRAVES, JR., | § | |
| Appellant | § | |
| | § | NO. _____ |
| v. | § | |
| | § | |
| THE STATE OF TEXAS, | § | |
| Appellee | § | |

_____

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**
_____

On Petition for Discretionary Review from the decision of the Court of Appeals for the Sixth Appellate District of Texas, at Texarkana, Texas, in Cause Number 06-13-00233-CR, affirming the Appellant's conviction for the offense of Murder, in Cause No. 1338568R, in the 297th Judicial District Court of Tarrant County, Texas.

TO THE JUDGES OF THE COURT OF CRIMINAL APPEALS:

Appellant, HAROLD L. GRAVES, JR., by and through his attorney of record, DAWN A. MOORE, respectfully seeks discretionary review by this Court of the decision by the Texarkana Court of Appeals, affirming the Appellant's conviction and sentence for the offense of Murder in Cause

Number 1338568R, in the 297th Judicial District Court of Tarrant County, Texas, the Honorable Everett Young, Judge presiding. *Graves v. State,* __ S.W.3d __, No. 06-13-00233-CR (Tex. App.-Texarkana, December 11th, 2014).

## STATEMENT REGARDING ORAL ARUGMENT

This case presents the Court with a situation wherein the Court of Appeals has rendered a decision in direct contravention with controlling precedent from this Court. The Court of Appeals' misconstruction of the facts of the case, and resultant errors in their application of the law to such facts, requires a detailed recitation of the facts and assessment of the evidence admitted at trial. The Appellant respectfully submits that for such reasons, oral argument would be of benefit to this Court in its ultimate resolution of the issues raised in this Petition.

## STATEMENT OF THE CASE

The Appellant was charged by indictment with the offenses of Murder (Count One), Aggravated Assault with a Deadly Weapon (Count Two), and Tampering with Physical Evidence (Count Three), in re-indicted Cause No. 1338568R (C.R. at 7). Appellant entered a plea of "not guilty" to the indictment, and trial was had before a jury (3 R.R. at 175). The State waived the Aggravated Assault Count (Count Two) prior to the submission of the case to the jury (5 R.R. at 159). The jury subsequently found Appellant "guilty" of

2

the offenses of Murder (Count One), and Tampering with Physical Evidence (Count Three) (C.R. at 156-157). The jury thereafter assessed Appellant's punishment at 37 years' confinement in the Institutional Division of the Texas Department of Criminal Justice, with no fine, in regard to Count One (C.R. at 170, 174; 6 R.R. at 107), and at 10 years' confinement in the Institutional Division of the Texas Department of Criminal Justice, with no fine, in regard to Count Three (C.R. at 171, 180; 6 R.R. at 107). Both sentences were ordered to run concurrently (C.R. at 174, 180). Appellant thereafter perfected the appeal of his convictions for the offenses of Murder and Tampering with Physical Evidence to the Court of Appeals for the Second Appellate District of Texas.

## STATEMENT OF PROCEDURAL HISTORY

Upon perfection of Appellant's appeal to the Second Court of Appeals of Texas, this cause was ultimately transferred to the Sixth Court of Appeals for disposition. That Court denied Appellant's request for oral argument, and the case was submitted to the Court without oral argument on October 14th, 2014. The Sixth Court of Appeals thereafter entered its Judgment and Opinion in this case on December 11th, 2014, _affirming_ Appellant's conviction and sentence for the offense of Murder, and _reversing_ Appellant's conviction for the offense of Tampering with Evidence and rendering a judgment of acquittal in regard to that offense. No motion for rehearing was filed in the Court of

3

Appeals; therefore, this *Appellant's Petition for Discretionary Review* is timely

if filed on or before Monday, January 12th, 2015, pursuant to Rules 68.2(a) and

4.1(a), Texas Rules Appellate Procedure.

## QUESTIONS PRESENTED FOR REVIEW

1. Whether the Court of Appeals erred in determining that there was "no evidence" in the record to support a finding that Appellant reasonably believed that the immediate use of deadly force was necessary, and that therefore Appellant was <u>not</u> entitled to any self-defense instruction?  (Court's Opinion at 6).

2. Whether the Court of Appeals erred in determining that the trial court's error in the admission of evidence of extraneous drug dealing offenses allegedly committed by Appellant during the guilt/innocence phase was harmless?  (Court's Opinion at 14).

## ARGUMENT

### Question One

1. Whether the Court of Appeals erred in determining that there was "no evidence" in the record to support a finding that Appellant reasonably believed that the immediate use of deadly force was necessary, and that therefore Appellant was <u>not</u> entitled to any self-defense instruction?  (Court's Opinion at 6).

In its Opinion, the Court of Appeals has indicated that "[t]here is no

evidence that [the deceased] used, or even attempted to use, deadly force;"

and thus, "[t]here is nothing in the record to support the contention that

Graves reasonably believed that the immediate use of deadly force was

necessary to protect himself against [the deceased's] use or attempted use of

4

unlawful deadly force." (Court's Opinion at 6). The Court further indicates that "[v]erbal provocation alone does not justify the use of deadly force against another," (citing Tex. Penal Code, Section 9.31 (b)(1)). (Court's Opinion at 6). Such conclusions ultimately led the Court to conclude that Appellant was <u>not</u> entitled to <u>any</u> self-defense instruction, thereby dispensing with any necessity for the trial court to further charge on the presumption of reasonableness, and the lack of any duty to retreat, pursuant to the "Castle Doctrine," in connection with its self-defense charge. (Court's Opinion at 6).

Appellant respectfully submits that the Court of Appeals' determinations in this regard were erroneous. In reaching its conclusions on this point, the Court of Appeals <u>wholly</u> <u>failed</u> to consider the right of the Appellant to defend himself from <u>apparent</u> <u>danger</u>, to the same extent as he would were the danger to be real, as recognized by this Court in <u>*Jones v. State,*</u> 544 S.W. 2d 139 (Tex. Crim. App. 1976), and <u>*Hamel v. State*</u>, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). This Court has clearly determined that the term "reasonably believes" (as used in Tex. Penal Code, Section 9.32, Deadly Force in Defense of Person), encompasses the traditional holding that a suspect is justified in defending against danger as he <u>reasonably</u> <u>apprehends</u> it. *Hamel*, at 493, citing *<u>Semaire v. State</u>*, 612 S.W. 2d 528, 530 (Tex. Crim. App. 1981). *<u>Hamel</u>* is further illustrative of a situation wherein the verbal threat made by

5

the alleged victim, coupled with a physical act committed by that individual, constituted <u>more</u> than mere verbal provocation alone such that self-defense was raised.

In Appellant's case, the decedent precipitated the confrontation with Appellant by coming to the Appellant's home during the dark of night. The decedent then committed the offense of burglary of Appellant's habitation by entering the home without consent and committing a physical assault upon Appellant. After being forcibly ejected from Appellant's home by the Appellant, the decedent threatened the use of deadly force against Appellant and the other occupants of Appellant's home. Although the testimony indicates that the decedent "started backing up" immediately prior to the shooting (4 R.R. at 147, 148), he was still only "2 feet, 3 feet" from Appellant at the time that Appellant purportedly fired the gun. Further, the evidence was unclear as to where (if anywhere) the decedent was headed, or what else he may have been doing at that time. At very best, the decedent's intent and conduct at that instant were uncertain.

Clearly, the actions by the decedent in this case constituted much <u>more</u> than mere verbal provocation, and were comparable to those acts found in *Hamel,* which were found sufficient to warrant the self-defense instruction. As indicated in *Hamel*:

> "…appellant was not entitled to a self-defense instruction if his use of force was in response to verbal provocation alone. But Charlie's threat did not stand alone. His move toward the car was the physical act that rendered his conduct more than a mere threat."

*Hamel*, at 494. The Appellant in *Hamel* was found to be entitled to the self-instruction because the decedent's physical conduct, coupled with his threat of a deadly assault, was found to constitute <u>more</u> than verbal provocation alone, and was thus a sufficient basis under the concept of <u>apparent</u> <u>danger</u> to raise the defense of self-defense. By failing to address the issue of the decedent's physical conduct coupled with the threat that he made, and by identifying the decedent's conduct as mere verbal provocation alone, the Court of Appeals has misconstrued the facts of the case, and wholly has failed to address the issue of the <u>apparent</u> <u>danger</u> as perceived by the Appellant. In so doing, the Court of Appeals has rendered an opinion that is directly in conflict with binding precedent from this Court as set out hereinabove; and rendered an opinion that is so inconsistent with the usual course of judicial proceeding such as to require this Court to invoke its supervisory power. Such failings by the Court of Appeals compel that this Court grant review of Appellant's case. See: Tex. Rules App. Procedure, Rule 66.3(c) and (f).

2. Whether the Court of Appeals erred in determining that the trial court's error in the admission of evidence of extraneous drug dealing offenses allegedly committed by Appellant during the guilt/innocence phase was harmless? (Court's Opinion at 14).

Appellant also respectfully seeks review of the Court of Appeals' determination that the erroneous admission of extraneous offense evidence regarding purported drug dealing by the Appellant at times prior to the alleged murder was harmless error. In its Opinion, the Court of Appeals acknowledges both that the admission of the extraneous offense evidence was error (Court's Opinion at 11); and that "[h]ere, the character evidence regarding Graves' involvement in narcotics transactions weighs in favor of a finding of harm" (Court's Opinion at 13). Nevertheless, and somewhat inexplicably, the Court ultimately determined that the "brevity of the testimony on this issue, the State's lack of emphasis, and the strong evidence of Graves' guilt," give the Court "fair assurance" that the error did <u>not</u> influence the jury's verdict, or had but slight effect. (Court's Opinion at 14, emphasis added).

Appellant respectfully asserts that such determination by the Court of Appeals is patently erroneous, particularly as it fails to take into consideration the <u>overt</u> <u>impropriety</u> in the State's offer of the evidence

actually offered and admitted at trial. Prior to the admission of the extraneous offense evidence at Appellant's trial, the trial court held an extended on-the-record discussion regarding the purported admissibility of the proffered evidence (5 R.R. 7-9, 15-16). The Appellant's Counsel was specific in his objection to that alleged conduct occurring "days before the murder" (5 R.R. 15); and the Court's ruling was similarly specific in limiting the admissible extraneous conduct to the "time of the offense or right before," and in not allowing any conduct occurring "days before" the murder (5 R.R.16). When offered before the jury, the State's prosecutor clearly expanded upon that conduct which the trial court had previously deemed to be admissible, asking: "Now, I'm asking you in a period of <u>time right before May 11th</u>, did you see a lot of traffic at that house, meaning people coming and staying a short period of time and leaving?... Did you see what you could identify as narcotics transactions there?" (5 R.R. 27 to 28). By its very question, the State was inquiring about conduct that allegedly occurred <u>before</u> the day of the murder (May 11th), and was soliciting evidence occurring outside that time frame previously authorized by the trial court. On cross-examination, Appellant's counsel purposely sought to identify the dates of the purported extraneous transactions observed by the witness, and the witness was unable to even identify those dates upon which the acts had

allegedly occurred. (5 R.R. 35 to 36). The trial court had specifically authorized the State to go into only that conduct <u>occurring at the time of the offense or right before</u>, and specifically indicated that the State could <u>not</u> go into conduct occurring in the <u>days</u> <u>before</u> the alleged murder. By purposefully asking about the period of time <u>before the date of the offense</u>, the State intentionally exceeded the authority that had been given them. The error was further compounded by the fact that the witness could not even recall when the conduct had purportedly occurred in relation to the date of the alleged murder. This overt and intentional violation of the trial court's ruling by the State should <u>not</u> be countenanced.

The State thereafter argued the extraneous offense evidence in its final argument to the jury. Though recognizing that the admission of such evidence was error; and moreover, that the error was of the type that "weighs in favor of a finding of harm" (Court's Opinion at 13); the Court of Appeals nonetheless minimizes the probable impact of such evidence upon the jury, indicating that "[T]he State characterized Graves' residence as a 'drug house' on one occasion. This comment was confined to two lines in a multi-volume record." (Court's Opinion at 13). While the Court of Appeals statement in this regard is technically correct, in that the words "drug house" appear only once during the argument, it nevertheless misstates the totality of the State's

evidence offered regarding the extraneous offenses, and the degree to which the State discussed such extraneous offense evidence during its final argument. The testimony regarding the extraneous drug transactions elicited by the State initially comprised about one page of the record (5 R.R. 27 to 28); however, due to the concern that such evidence would have a devastating effect upon the jury's consideration of Appellant's self-defense claim, Appellant's counsel was compelled to cross-examine the witness at length about the alleged extraneous offenses in order to demonstrate both the <u>remote</u> <u>nature</u> of the alleged conduct, and the <u>unreliability</u> of the State's witness testifying to these facts. This testimony comprised an additional five pages of the record (5 R.R. 31 to 36). On re-direct, the State then inquired regarding such extraneous offense evidence yet again, comprising approximately one additional page of the record (5 R.R. 38). For such reason, the Appellant respectfully submits that the Court of Appeals' reliance upon "the brevity of the testimony on this issue" in its failure to find harm is misplaced. (Court's Opinion at 14). Further, and contrary to the Court of Appeals' characterization, the State's counsel actually referred to such extraneous offense evidence on <u>more</u> than one occasion in his final argument. The Court of Appeals' Opinion correctly recites that the prosecutor's reference to Appellant's home as a "drug house" occurs on only one occasion

(5 R.R. 186); however, the evidence of the extraneous offense conduct is clearly delineated  by the State as the Appellant's motivation for his conduct in the case, an assertion which was repeated throughout the prosecutor's final argument.  For example:  "[H]e (Appellant) wanted to handle it himself, and he did, without police involvement," (5 R.R. 186); and "(h)e chose to show, you know, prudence is the better part of valor.  He chose to not be a level-headed person and get the police involved to avoid this complication that he knew was coming.  *Because he didn't want the police there and because he didn't want to be brought in here today to admit what was going on in that house beforehand and afterwards.*" (5 R.R. 190)   Contrary to the statement of the Court of Appeals to the contrary, a <u>significant</u> <u>portion</u> of the State's concluding argument was dedicated to the State's assertion that the Appellant's conduct in not wanting the police to come to his house (and thus the need for Appellant to handle this situation personally) was attributable to his concern regarding the potential discovery of his alleged drug-dealing activities were the police to be summoned.  In this regard, the Court of Appeals' reliance upon "the State's lack of emphasis" upon such extraneous offense evidence is also misplaced.  (Court's Opinion at 14).  This misconstruction of the facts, and misinterpretation of the State's argument by the Court of Appeals, clearly calls into question the Court of Appeals' assertion

that the error had no effect, or little effect, upon the jury's verdict. (Court's Opinion at 14).

This Court has previously indicated that pursuant to Rule 44.2(b), Tex. Rules of Appellate Proc., any non-constitutional error that does not affect appellant's substantial rights must be disregarded; and that a substantial right is affected when the error has a substantial and injurious effect or influence in the determination of the jury's verdict. *Haley v. State*, 173 S.W.3d 510, 518-19 (Tex. Crim. App. 2005). This Court has further indicated that in the assessment of the likelihood that the jury's decision was adversely affected by such error, the appellate court should consider everything in the record, including the testimony and evidence admitted, the nature of the evidence supporting the verdict, the character of the error and how it might be considered in connection with the other evidence in the case. Additionally, the reviewing court may also consider the jury instructions, the State's theory of the case and any defensive theories, the arguments of counsel, the voir dire examination, and whether the State emphasized the error. *Id*., citing *Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002).

This Court has also clearly indicated that in assessing potential harm, the focus is not upon whether the outcome of the trial was "proper" despite the error; but rather, upon whether or not the error had a substantial or

injurious effect or influence upon the jury's verdict. *Barshaw v. State*, 342 S.W.3d 91, 93-94 (Tex. Crim. App. 2011). The court reviews the entire record in an attempt to ascertain the effect or influence upon the verdict of the wrongfully admitted evidence. *Sandoval v. State*, 409 S.W. 3d 259, 287-288 (Tex. App.-Austin 2013, no pet.). In so doing, the reviewing court attempts to calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2011).

It is imperative that in making such an assessment, that the Court look to the "character of the alleged error," *Barshaw*, at 94; and this Court has indicated that the reviewing court should reverse the case when the court has a "grave doubt" whether the result of the trial was free from substantial influence from the error. "Grave doubt" means that in the judge's mind, the matter is so evenly balanced, that "he feels himself in virtual equipoise as to the harmlessness of the error." *Id.*, quoting *Burnett v. State*, 88 S.W.3d 633, 637-638 (Tex. Crim. App. 2002). "[I]n cases of grave doubt as to harmlessness the [Appellant] must win." *Barshaw*, at 94.

Clearly, a trial court has no "right" to be "wrong" in its admission of evidence. *Montgomery v. State*, 810 S.W.2d 372, 393 (Tex. Crim. App. 1991). Moreover, the State intentionally and overtly <u>exceeded</u> that authority that had been given to it by the trial court in regard to the evidence of extraneous

offenses that would be allowed. The total testimony regarding the erroneously admitted evidence comprised approximately seven (7) pages of testimony in the record of the case. Contrary to the inference contained within the Court of Appeals' Opinion, the State's emphasis and discussion of this evidence <u>was</u> <u>not</u> "confined to two lines in a multi-volume record," (Court's Opinion at 13); but rather was a <u>significant</u> and <u>cogent</u> part of the State's argument refuting Appellant's self-defense claim. The extraneous drug dealing offenses by Appellant were relied upon by the State as the <u>overriding</u> <u>motivation</u> for the Appellant's conduct in committing the offense, and was emphasized as such throughout a significant portion of the State's concluding argument; an argument which the Appellant's Counsel had no opportunity to rebut. The inherent harm that is attendant to, and which emanates from extraneous offense evidence which is erroneously admitted, is multiplied significantly which that evidence is relied upon by the State as the <u>overriding</u> <u>motivation</u> for that conduct which is at issue in the case. Even more importantly, the intentional and overt nature of the State's conduct in purposefully exceeding the bounds of that evidence which had been deemed to be admissible by the trial court should not be legitimized or excused by the appellate courts, as doing so will only serve to "reward" or "encourage" such misconduct on part of the State.

The Sixth Court of Appeals was correct in its determination in that the admission of this extraneous offense evidence was error. The Court was further correct in its determination that this error was one of the type that "weighs in favor of a finding of harm." Nonetheless, the Court was incorrect in its assessment that the State "did not focus on the extraneous-offense evidence" in its argument, and in regard to its finding regarding "the brevity of the testimony on this issue." (Court's Opinion at 14). The Court of Appeals' misconstruction of the evidence, and misinterpretation of the degree to which the State emphasized this evidence in its concluding argument, resulted in its improper assessment of the degree of harm suffered by Appellant due to the error. It therefore falls to this Court to correct this injustice. See Tex. Rules Appellate Procedure, Rule 66.3(f).

## CONCLUSION

The Appellant respectfully asserts that in its affirmance of the Appellant's conviction for the offense of Murder, the Court of Appeals has misconstrued the evidence in the case, and has failed to adhere to applicable precedent from this Court, thereby rendering a decision which directly conflicts with such applicable precedent. Further, the Court of Appeals' misconstruction of the facts, and misinterpretation of the State's final

argument, has resulted in the Court's erroneous determination that the improper admission of the extraneous offense evidence was harmless error.

## PRAYER FOR RELIEF

For the above and foregoing reasons, Appellant respectfully prays that this Court grant the requested review, and upon such review, reverse Appellant's conviction for the offense of Murder in this cause, and order that the case be returned to the trial court for a new trial.

Respectfully submitted,


/S/ Dawn A. Moore
DAWN A. MOORE
Texas State Bar No. 00788072
*BOSWELL & MOORE, P.C.*
1504 E. McKinney Street, Suite 200
Denton, Texas  76209
*dawn@boswellandmoore.com*
(940) 382-4711 - *main*
(940) 349-9922 – *fax*

*ATTORNEY FOR APPELLANT*

## CERTIFICATE OF COMPLIANCE

The Appellant certifies that the relevant portions of the *Appellant's Petition for Discretionary Review* in the instant cause contain a word count of 3,058, said count being generated by the computer program Microsoft Word that was used to prepare the document.

*/S/ Dawn A. Moore*
DAWN A. MOORE

## CERTIFICATE OF SERVICE

On this the 22nd day of January, 2015, I hereby certify that a true and correct copy of the foregoing *Appellant's Petition For Discretionary Review* was served upon the Hon. Andy Porter and Edward L. Wilkinson, Assistant Criminal District Attorneys for Tarrant County, Texas, at 401 West Belknap Street, Fort Worth, Texas 76196-0201; and upon the State's Prosecuting Attorney, the Hon. Lisa C. McMinn, at P.O. Box 13046, Austin, Texas 78711; by email service.

*/S/ Dawn A. Moore*
DAWN A. MOORE

**<u>APPENDIX</u>**




OPINION OF THE COURT OF APPEALS



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00233-CR

HAROLD L. GRAVES, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1338568R

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

## O P I N I O N

Harold L. Graves, Jr., was convicted by a jury of murder and tampering with physical evidence, for which he received concurrent sentences of thirty-seven years' and ten-years' imprisonment, respectively. We affirm Graves' murder conviction. Because the evidence is legally insufficient to support the tampering with physical evidence conviction, we reverse that judgment of conviction for tampering and enter a verdict of acquittal on the tampering offense only.

## I.     Background

Graves was awakened by the sound of pounding on the front door of his Fort Worth[1] home in the early morning hours of May 11, 2012. When Graves opened the door, he was confronted by Eric Hollie, who apparently wanted to retrieve his cell phone from Dwanna Conner, Graves' live-in girlfriend. Conner had traded Hollie crack cocaine the previous day in exchange for the cell phone, and Hollie wanted to undo the deal. Graves and Hollie engaged in a heated argument for several minutes. At one point, Hollie attempted to forcibly enter the home, but he was pushed back outside by Graves. After Hollie threatened "to come back and shoot up the whole house," he began to back away from the front door. At that point, Graves shot the unarmed Hollie with a handgun. Graves then went back inside, gathered the occupants, including Conner, Connor's friend, Samantha Iglesias, and Graves' teenaged son, Trey Graves.

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

The four left the residence in Conner's car and drove to the home of Graves' cousin where they spent the remainder of the night.

At approximately 7:00 a.m. that same morning, a neighbor discovered Hollie's lifeless body lying in front of Graves' home; the neighbor notified the police. Graves was ultimately arrested for the shooting, but the handgun used in the shooting was never recovered. After a jury trial, Graves was convicted of murder and of tampering with physical evidence. Graves raises six points of error on appeal.

## II.  Jury Charge Error

In his first two points of error, Graves complains of the trial court's refusal to instruct the jury on the "presumption of reasonableness" and the lack of any "duty to retreat" in conjunction with the court's instructions on self-defense and pursuant to Section 9.32 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 9.32(b), (c) (West 2011). The State responds that the trial court properly denied the requested instructions because the evidence showed that Hollie was unarmed, and there was no evidence that Graves reasonably believed deadly force was needed to protect himself, the occupants of his home, or his personal property.

### A.  Standard of Review

We review claims of jury charge error under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, we then evaluate the harm caused by that error. *Id.* If there is no error, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

3

The trial court must give a requested instruction on every defensive issue raised by the evidence, regardless of the source of the evidence, the strength of the evidence, or the credibility of the evidence. *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013); *Juarez v. State*, 308 S.W.3d 398, 404–05 (Tex. Crim. App. 2010). A defense is raised by the evidence if there is some evidence on each element of the defense that, if believed by the jury, would support a rational inference that that element is true. *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

**B.     Analysis**

Under Texas law, a person may use deadly force if he or she reasonably believes such force is immediately necessary to protect himself from the other person's use of deadly force. TEX. PENAL CODE ANN. § 9.32 (West 2011). When certain conditions are met, a defendant is entitled to an instruction informing the jury that his action is presumed to be reasonable. A person is presumed to have acted reasonably in the use of deadly force while protecting himself or his family from an intruder if the intruder is attempting to enter the individual's habitation or attempting to commit certain other specific crimes. TEX. PENAL CODE ANN. § 9.32(b)(1)(A); *Lee v. State*, 415 S.W.3d 915, 919 (Tex. App.—Texarkana 2013, pet. ref'd). When assessing the reasonableness of a defendant's belief that force was immediately necessary, the jury should be instructed that it may not consider whether the defendant failed to retreat if the defendant (1) had a right to be present at the location where the conduct occurred, (2) did not provoke the attack, and (3) was not engaged in criminal activity at the time the deadly force was used. TEX. PENAL

4

CODE ANN. § 9.32(c), (d); *see Morales v. State*, 357 S.W.3d 1, 5 (Tex. Crim. App. 2011); *Whitney v. State*, 396 S.W.3d 696, 703 (Tex. App.—Fort Worth 2013, pet. ref'd).

Trey witnessed the encounter between Graves and Hollie from the darkened living room. He testified that Hollie wanted to come inside the house to retrieve his cell phone, but Graves would not permit entrance. Hollie then violently pushed Graves out of the way and began to enter the home. In response, Graves pushed Hollie back outside. This incident happened after the two had engaged in a "pretty heated argument" for about five minutes. At that point, Graves told Hollie that he needed to come back in the morning. Hollie indicated that he was going to "come back and shoot the whole house up." At that time, Hollie began backing up on the porch. Graves then shot Hollie.[2]

The State contends that the record is devoid of evidence regarding Graves' state of mind at the time he killed Hollie. To be entitled to any self-defense instruction involving deadly force, Graves had to reasonably believe that deadly force was immediately necessary to protect himself or others from Hollie's use or attempted use of deadly force. *See* TEX. PENAL CODE ANN. § 9.32. A "reasonable belief" is "a belief that would be held by an ordinary and prudent [person] in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(42) (West Supp. 2014). "Deadly force" is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." TEX. PENAL CODE ANN. § 9.01(3) (West 2011).

---

[2] When asked, "After the man on the porch started backing up, what did your father do?" Trey responded, "He reached his hand out and shot him."

5

There is no evidence that Hollie used, or even attempted to use, deadly force. Each witness who was asked testified that he or she saw no evidence that Hollie possessed any type of weapon during the confrontation with Graves. Moreover, the evidence shows that Hollie was in the process of backing away from Graves when Graves shot him, not attempting to enter the habitation. Verbal provocation alone does not justify the use of deadly force against another. TEX. PENAL CODE ANN. § 9.31(b)(1) (West 2011). There is nothing in the record to support the contention that Graves reasonably believed the immediate use of deadly force was necessary to protect himself against Hollie's use or attempted use of unlawful deadly force. *See Dearborn v. State*, 420 S.W.3d 366, 378 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding defendant not entitled to self-defense instruction where evidence showed victim armed with nothing other than fists and noting blows with fists not typically considered deadly force); *Trammel v. State*, 287 S.W.3d 336, 341 (Tex. App.—Fort Worth 2009, no pet.) (appellant not entitled to self-defense instruction in absence of immediacy of threat from victim).

Because there is nothing in the record to support a finding that Graves reasonably believed the immediate use of deadly force was necessary, Graves was not entitled, in the first instance, to a self-defense instruction. Therefore it logically follows that the trial court properly denied his request to instruct the jury on the presumption of reasonableness and the lack of a duty to retreat. *See* TEX. PENAL CODE ANN. § 9.32(b), (c).

6

## III. Extraneous-Offense Evidence

In his third point of error, Graves contends that the trial court erred in admitting evidence of his alleged drug dealing prior to the date of the offense for which he was being tried. At trial, Graves' neighbor, Michael Davis, Jr., testified as follows:

Q: Now, I'm asking you in a period of time right before May 11, did you see a lot of traffic at that house, meaning people coming and staying a short period of time and leaving?

A: Yes, ma'am.

Q: Did you see what you could identify as narcotics transactions there?

[Defense Counsel]: Object to that as an extraneous offense, Your Honor.

THE COURT: I'm going to overrule the objection . . . .

[Defense Counsel]: And ask that we have a running objection to any further questions about trafficking and narcotics.

THE COURT: I'll permit a running objection.

Q: Did you see what you could identify as narcotics transactions?

A: Yes, ma'am.

Q: And was Harold Graves involved?

A: Yes, ma'am.

. . . .

Q: So what we have is two occasions of some guy you recognize supposedly getting a baggie outside of Harold's house.

A: Yes.

Q: And you don't remember what it is?

7

A:     No.

            . . . .

Q:     On what days?

A:     I don't know.  It's been a while.

Davis' testimony was offered for the purpose of demonstrating that Graves was engaged in a criminal activity at the time the shooting occurred, such that Graves would not be entitled to a self-defense instruction which included the "Castle Doctrine" language discussed in the previous section of this opinion.[3]

### A.    Standard of Review

On appeal, Graves complains that Davis' testimony should have been excluded under Rules 402, 403, and 404(b) of the Texas Rules of Evidence.  *See* TEX. R. EVID. 402, 403, 404(b).  We review a trial court's admission of evidence for an abuse of discretion.  *Sanders v. State*, 422 S.W.3d 809, 812 (Tex. App.—Fort Worth 2014, pet. ref'd).  We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.  *James v. State*, 335 S.W.3d 719, 723 (Tex. App.—Fort Worth 2011, no pet.) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).  We reverse the ruling only if it lies outside the zone of reasonable disagreement.  *See Sanders*, 422 S.W.3d at 812–13.

---

[3]In a pretrial conference, the trial court stated, "If self-defense is an issue, then I think the State is entitled to attempt to show that a certain portion of it may not apply if the defendant was engaged in criminal activity.  So the Court will permit the State to go into drug traffic at the time and immediately before the commission of the alleged offense."

### B. Preservation of Error

At trial, Graves' sole objection to the referenced testimony was based on Rule 404. *See* TEX. R. EVID. 404. Although Graves complains on appeal that Davis' testimony should have been excluded because it was irrelevant (Rule 401) and unfairly prejudicial (Rule 403), these complaints were not presented to the trial court. As a general rule, to preserve a complaint for appellate review, a party must make a timely request, objection, or motion in the trial court setting out the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. *Saldano v. State*, 70 S.W.3d 886–87 (Tex. Crim. App. 2002); *see* TEX. R. APP. P. 33.1(a). Further, the trial court must have ruled on the request, objection or motion. TEX. R. APP. P. 33.1(a)(2). We may not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *Benson v. State*, 240 S.W.3d 478, 483 (Tex. App.—Eastland 2007, pet. ref'd) (holding relevance and unfair prejudice complaints not preserved for appellate review when no objection made at trial). Because Graves has not preserved for appellate review his complaint that Davis' testimony was irrelevant under Rule 401 and unfairly prejudicial under Rule 403, we overrule these points of error.

### C. Rule 404 Analysis

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." *Id*. "The 'other

purposes' listed in Rule 404(b) are not exclusive or exhaustive but are merely representative." *Render v. State*, 347 S.W.3d 905, 920–21 (Tex. App.—Eastland 2011, pet. ref'd) (citing *Robinson v. State*, 844 S.W.2d 925, 928 (Tex. App.—Houston [1st Dist.] 1992, no pet.)). For example, when an accused claims self-defense, the State may introduce evidence of prior violent acts where the accused was an aggressor in order to show intent and to rebut the defense. *Jones v. State*, 241 S.W.3d 666, 669 (Tex. App.—Texarkana 2007, no pet.).

Here, the State's purpose in offering Davis' testimony—that Graves ran a "drug house"—was to rebut Graves' claimed entitlement to self-defense. More precisely, the State wanted to prove that, because Graves was engaged in criminal activity, he was not entitled to additional instructions regarding the presumption of reasonableness and the lack of a duty to retreat in conjunction with the court's instruction on self-defense. *See* TEX. PENAL CODE ANN. § 9.32(b), (c), (d).

We initially note that Davis never testified that Graves ran a "drug house." Davis testified that he witnessed what he believed to be Graves' involvement in "narcotics transactions" on two occasions, at some undetermined time prior to the date of Hollie's death on May 11, 2012.

"Criminal activity" appears in two different sections of the self-defense statute. First, the use of deadly force is presumed reasonable if the actor "was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of the law or ordinance regulating traffic *at the time the force was used*." TEX. PENAL CODE ANN. § 9.32(b)(3) (emphasis added). Second, a person is not required to retreat before using deadly force if that

10

person is not, among other things, "engaged in criminal activity *at the time the deadly force is used*." TEX. PENAL CODE ANN. § 9.32(c) (emphasis added). Both sections of the statute require the criminal activity to occur at the time deadly force was used. Davis' testimony that he believed Graves was involved in two narcotics transactions at some unknown time *prior* to the shooting does nothing to establish that Graves was involved in criminal activity *at the time* deadly force was used. Davis' extraneous-offense testimony was therefore inadmissible under Rule 404(b).

Having determined that the evidence was erroneously admitted, we must now decide whether the admission of this evidence was so harmful as to require a new trial. The erroneous admission of extraneous-offense evidence is not constitutional error. *Higginbotham v. State*, 356 S.W.3d 584, 592 (Tex. App.—Texarkana 2011, pet. ref'd) (citing *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007)). Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that an appellate court must disregard a nonconstitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Nonconstitutional error is not grounds for reversal if, "after examining the record as a whole," there is "fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (internal quotation marks omitted); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

11

In assessing the likelihood that the jury's decision was adversely affected by the error, we "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla*, 78 S.W.3d at 357 (quoting *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)). We may also consider, in conducting a harm analysis, the presence of overwhelming evidence of guilt. *Id.*

The evidence of Graves' guilt is strong. Graves was aware of the fact that Conner traded cocaine for a cell phone and that Hollie wanted to undo the deal. Graves was expecting trouble from Hollie that night and told Trey that Hollie might be coming over concerning a problem with a cell phone. Graves even suggested that Trey might have to stay with his grandmother that night because Conner was arguing with "some dude" over a cell phone.

Iglesias testified that, on the evening before the shooting, Conner had agreed to drive her to Weatherford. Conner later told Iglesias that she could not make the trip that evening because "some sh-- was about to go down." Later that evening, Conner asked Graves, "[Y]ou got my back on this?" Graves responded affirmatively. Conner indicated that the dispute related to a drug deal in which Conner gave crack cocaine to Hollie in exchange for his cell phone, and the trouble arose when Hollie wanted the cell phone back. Like Trey, Iglesias also heard the argument between Hollie and Graves prior to hearing the sound of a gunshot.

As Graves suspected, Hollie showed up on his doorstep demanding the return of his cell phone. After a heated argument, Hollie threatened to come back and shoot the place up. After

12

making this statement, Hollie began to back away from Graves. As Hollie backed up, Graves, according to Trey's testimony, "reached his hand out and shot him." There is no evidence that Hollie was armed with any type of weapon at the time of his death. As Trey, Graves, Conner and Iglesias drove away from the residence, Graves stated that he needed to get the gun to his cousin's house. Iglesias understood that Graves was removing the gun from the premises.

In addition to evidence of guilt, we are to assess "the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.* Here, the character evidence regarding Graves' involvement in narcotics transactions weighs in favor of a finding of harm. "By its very nature, an improperly admitted extraneous offense tends to be harmful. It encourages a jury to base its decisions on character conformity, rather than evidence that the defendant committed the offense with which he or she has been charged." *Jackson v. State*, 320 S.W.3d 873, 889 (Tex. App.—Texarkana 2010, pet. ref'd).

In considering how the erroneously admitted evidence might be considered in connection with other evidence in the case, the emphasis by the State should be considered. *Jackson*, 320 S.W.3d at 890. In closing, the State argued that Graves' actions were not taken in self-defense and did not focus on the extraneous-offense evidence. The State characterized Graves' residence as a "drug house" on one occasion. This comment was confined to two lines in a multi-volume record. *Compare DeLeon v. State*, 77 S.W.3d 300, 316 (Tex. App.—Austin 2001, pet. ref'd) (concluding admission of extraneous-offense evidence was harmful where "[m]ore time was spent developing the extraneous wrongdoing than proving the ultimate issues alleged in the

13

indictment"). Defense counsel briefly mentioned Davis' testimony to point out its lack of credibility.

Given the brevity of the testimony on this issue, the State's lack of emphasis, and the strong evidence of Graves' guilt, we have a fair assurance that the error did not influence the jury or had but a slight effect in its determination that Graves was guilty of the charged offense of murder.

## IV.    Failure to Charge Jury on Lesser-Included Offense

The indictment on which Graves was tried originally included an allegation of aggravated assault with a deadly weapon, listed as count two. Prior to closing arguments, the State waived count two of the indictment. Following the State's waiver, Graves requested submission of the aggravated assault with a deadly weapon charge as a lesser included offense of the primary murder offense. The trial court declined to so instruct the jury. On appeal, Graves contends that he was entitled to an aggravated assault instruction because the elements of the lesser offense are included within the elements of the greater offense and because there was evidence suggesting that he lacked the requisite mental state for a murder conviction.

The Texas Court of Criminal Appeals has set forth a two-step analysis to determine whether a defendant is entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Jones v. State*, 241 S.W.3d 666, 670 (Tex. App.—Texarkana 2007, no pet.). Under the "cognate-pleadings" test, we initially determine whether the elements of the lesser-included offense are included within the proof necessary to establish the elements of the charged offense. *Hall*, 225 S.W.3d at 535–36; *Jones*, 241 S.W.3d at 670. "This is a question

14

of law, and it does not depend on the evidence to be produced at trial." *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011).

Only after the first step is answered positively do we proceed to the second step of determining if there is some evidence to support an instruction on the lesser-included offense. *Hall*, 225 S.W.3d at 528; *Jones*, 241 S.W.3d at 670–71. The existence of some evidence, "within or without the defendant's testimony, which raised the lesser included offense controls the issue of whether an instruction on the lesser included offense should be given." *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998). The evidence must, however, establish the lesser-included offense as a valid rational alternative to the offense charged, *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000), and must show that if the defendant is guilty, he is guilty only of the lesser-included offense. *Hall*, 225 S.W.3d at 536; *Jones*, 241 S.W.3d at 671 (citing *Enriquez v. State*, 21 S.W.3d 277, 278 (Tex. Crim. App. 2000)).

In applying the first step of the lesser-included-offense analysis, we do not consider the evidence presented at trial. Instead, we consider the statutory elements of murder, as modified by the particular allegations in the indictment. In this case, the State was required to prove that (1) Graves, (2) with intent to cause Hollie serious bodily injury, (3) committed an act clearly dangerous to human life—shooting Hollie with a gun—(4) that caused Hollie's death. *See* TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2011). To these we compare the elements of the lesser offense of aggravated assault with a deadly weapon causing bodily injury.[4] Such offense is

---

[4]Aggravated assault can be committed in different ways. We restrict our consideration here to those apparent in Graves' request in the trial court. *See* TEX. PENAL CODE ANN. § 22.02 (West 2011).

committed if a person (1) "intentionally, knowingly, or recklessly causes bodily injury to another" and (2) "uses or exhibits a deadly weapon." TEX. PENAL CODE ANN. §§ 22.01(a), 22.02(a)(2) (West 2011).

Here, a charge of aggravated assault causing bodily injury while using a deadly weapon would have differed from the indictment's murder charge only with respect to (1) the inclusion of additional, lesser culpable mental state options, and (b) the absence of the requirement that the bodily injury result in death. We thus conclude that, because the elements of aggravated assault causing bodily injury are "established by proof of the same or less than all the facts required to establish the commission of the offense charged," the first prong of the cognate pleadings test is satisfied. *Hall*, 225 S.W.3d at 536.[5]

The second question is whether there is any evidence that Graves, if he is guilty, is guilty only of the lesser offense. *Id.* According to the State, the record does not contain evidence from which a jury could rationally acquit Graves of murder while convicting him of aggravated assault causing bodily injury while using a deadly weapon. This reasoning is based, in part, on the premise that the "bodily injury" in this case must logically refer to Hollie's death. The evidence shows that Graves shot and killed Hollie with a handgun while Hollie was standing on Graves' porch. Although Graves points out the weakness in Trey's testimony witnessing this event, i.e., it was dark at the time of the shooting and Trey was hiding behind a wall and could not see a gun, it is apparent that Graves' action caused Hollie's death. Iglesias testified that she heard Graves say shortly after the shooting, "I just killed . . . [Hollie]."

---

[5]The State concedes the first element of the cognate pleadings test is satisfied.

16

In *Jackson v. State*, 992 S.W.2d 469 (Tex. Crim. App. 1999), Jackson was tried for capital murder and requested a jury instruction on the lesser offense of aggravated assault by recklessly causing serious bodily injury. *Id.* at 474–75. In that case, there was no doubt that Jackson caused the death of the victim and no evidence that the victim suffered a lesser form of bodily injury. In finding no error in the trial court's refusal to instruct the jury on aggravated assault, the court noted that "[a] murder defendant is not entitled to an instruction on the lesser included offense of aggravated assault when the evidence showed him, at the least, to be guilty of a homicide." *Id.* at 475. The court continued, "Since there was no evidence from which a rational jury could conclude that appellant did other than cause the death of the victim, the only lesser included offense that was raised by the evidence of recklessness was manslaughter." *Id.*

As in *Jackson*, Graves likewise contends that there is sufficient evidence of recklessness in the record to support the inclusion of the requested lesser-included-offense instruction. Even assuming, though, that there is some evidence of recklessness, the fact remains that Hollie died from the gunshot wound inflicted by Graves. Although Graves never admitted killing Hollie, there is "no evidence from which a rational jury could conclude" that Graves "did other than cause the death" of Hollie. *Id.* at 474–75; *Armstrong v. State*, 179 S.W.3d 84, 87 (Tex. App.—Fort Worth 2005, no pet.) (holding Armstrong was not entitled to instruction on aggravated assault in capital murder case where no dispute that Armstrong caused victim's death); *see Hernandez v. State*, 416 S.W.3d 522, 526–27 (Tex. App.—Eastland 2013, pet. ref'd) (no evidence in record to permit jury to acquit appellant of murder while convicting him of lesser-

17

included offense of aggravated assault). Accordingly, Graves was not entitled to an instruction on the lesser-included offense of aggravated assault.

## V.     Hearsay Evidence

Graves next complains of error in the admission of hearsay statements allegedly made by Conner to Iglesias regarding Conner's exchange of crack cocaine for Hollie's cell phone. The following questioning of Iglesias by the State provides context for Graves' complaint:

> Q.     Now, you said you went to the bedroom?
>
> A.     Yes.
>
> Q.      Which bedroom was that?
>
> A.     The bedroom in the back that Dwanna was in.
>
> Q.     Was there anybody staying in that bedroom already?
>
> A.     No. It was Dwanna and I went to the back bedroom. Harold was on the couch.
>
> Q.     But Dwanna was also there.
>
> A.     Yes.
>
> Q.     Now, when you were back there with Dwanna, was there any conversation you heard between she and Harold?
>
> A.     Yeah. She was in the back bedroom and he was on the couch, and there was an exchange where she asked Harold, she said, you got my back on this, you got my back? And he said, yeah, I got your back. Begrudgedly [sic] he said it.
>
> Q.     So she's asking him, do you have my back on this, and he's saying, yes, I do, begrudgingly.
>
> A.     Yes.

18

Q. And did you ask her what that was about?

A. Yeah. I said, what's that all about? And she said that there was this dude and she had -- she had sold him some crack and that he gave her –

Q. Hold on before you go through that. Specifically she's talking about a drug deal that she engaged in, correct?

A. Yes.

Q. So she is describing a criminal act she has committed.

A. Yes.

Q. Go ahead and describe to us what she said.

A. She said that she gave him the crack –

[Defense Counsel]: Object to hearsay, Your Honor.

THE COURT: I'm going to overrule the objection at this time.

[The State]: Thank you, Your Honor.

A. And in exchange he gave her the phone and now he wants the phone back, but she ain't giving it back to him. A deal is a deal.

Q. So she's indicating that she had traded this cell phone for crack.

A. Yes.

Q. And this is a matter that previously she was discussing with Harold, right?

A. I assume so.

Q. Because she told you that's what this conversation is about.

A. Right, uh-huh.

19

Graves complains his objection was erroneously overruled, positing that the objected-to evidence is not admissible as a statement against interest.  *See* TEX. R. EVID. 803(24).[6] Conversely, the State contends that the trial court properly overruled Graves' objection as untimely and that the complained-of testimony was cumulative of evidence already admitted without objection.

### A.    Standard of Review

We review the trial court's decision to admit evidence under an abuse of discretion standard.  *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007).  "A trial court does not abuse its discretion if the decision to admit evidence is within the 'zone of reasonable disagreement.'"  *Marsh v. State*, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)).  "If the trial court's decision on the admission of evidence is supported by the record, there is no abuse of discretion, and the trial court will not be reversed."  *Id.* (citing *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Montgomery*, 810 S.W.2d at 379).  We will not substitute our own decision for that of the trial court.  *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)).

### B.    Analysis

To preserve error for appellate review, an appellant must make a timely and specific objection.  TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1).  To be considered timely, the

---

[6]At trial, the State did not proffer a theory of admissibility pertaining to the complained-of evidence.

objection must be made as soon as the ground for complaint is apparent or should be apparent. *Aguilar v. State*, 26 S.W.3d 901, 905 (Tex. Crim. App. 2000).

The referenced testimony indicates that Conner and Iglesias were engaged in a conversation in which Conner told Iglesias that Graves responded affirmatively when Conner asked him if "you got my back on this, you got my back?" and that Graves had Conner's "back" relative to a drug deal in which Conner had engaged. This testimony was admitted in the absence of any objection from Graves. Although Graves objected to the question, "She said she gave him the crack[,]" Iglesias had already testified that Conner sold crack to "some dude." Graves failed to object to that testimony, and thus, his objection to the second question was not timely. Graves, therefore, failed to preserve this complaint for appeal. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1); *Lozano v. State*, 359 S.W.3d 790, 823 (Tex. App.—Fort Worth 2012, pet. ref'd) (holding that objection must be made as soon as basis for objection becomes apparent and that failure to object in timely manner forfeits complaints about admissibility of evidence). Moreover, evidence of the "crack" sale was previously admitted without objection. *See Lozano*, 359 S.W.3d at 823.

Graves nevertheless contends that his objection was timely because, prior to his objection, there had been no testimony indicating that the purported drug deal involved Hollie or Hollie's cell phone. Trey had previously testified, though, that Graves told him that Dwanna was arguing with "some dude" about a cell phone and that Trey might have to spend the night at his grandmother's house because "an incident" was happening. Trey saw the cell phone his father mentioned sitting on the couch of Graves' home on the evening prior to the shooting. Trey

21

further testified that, at approximately 4:00 a.m. the following morning, he was awakened by an argument his father was having "with Eric [Hollie]." Trey heard Hollie ask about a cell phone and heard his father tell Hollie he could come back and get the phone in the morning. No objection was posed to this testimony. To the extent Graves' hearsay objection is broadly construed to encompass Iglesias' testimony that Graves and Conner discussed the "crack" exchange for a cell phone and that the cell phone owner wanted it returned, such objection was properly overruled. This testimony was cumulative of that already admitted without objection.

## VI. Sufficiency of the Evidence to Support Tampering Conviction

In his final point of error, Graves contends that the evidence was insufficient to support his conviction of tampering with physical evidence as alleged in count three of the indictment, by secreting a firearm with knowledge that an investigation was pending or in progress.

### A. Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)

22

(citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

## B.    Analysis

A person commits the offense of tampering with physical evidence if the person, "(1) knowing that an investigation or official proceeding is pending or in progress, (2) alters, destroys, or conceals any record, document, or thing, (3) with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding." TEX. PENAL CODE ANN. § 37.09(a)(1) (West Supp. 2014); *Carnley v. State*, 366 S.W.3d 830, 833–34 (Tex. App.—Fort Worth 2012, pet. ref'd). Graves was indicted under this section of the statute,[7] and the jury was likewise charged under this section of the statute.[8]

At trial, there was evidence that, although Trey witnessed the shooting, he neither saw the gun nor heard Graves discuss the gun. Iglesias testified that she heard Graves admit that he shot Hollie and later heard him say while in the car leaving the scene of the shooting that "he needed

---

[7]The indictment stated,

> THAT THE DEFENDANT . . . ON OR ABOUT THE 11TH DAY OF MAY, 2012, DID THEN AND THERE KNOWING THAT AN INVESTIGATION WAS PENDING OR IN PROGRESS, DID ALTER, DESTROY, OR CONCEAL A RECORD, DOCUMENT, OR THING WITH INTENT TO IMPAIR ITS VERITY OR AVAILABILITY AS EVIDENCE IN SAID INVESTIGATION, TO-WIT: BY SECRETING A FIREARM.

[8]The court's charge stated,

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 11th day of May, 2012, in Tarrant County, Texas, the Defendant, Harold L. Graves, Jr., did then and there knowing that an investigation was pending or in progress, did alter, destroy, or conceal a record, document, or thing with intent to impair its verity or availability as evidence in said investigation, to-wit: by secreting a firearm, then you will find the Defendant guilty of the offense of tampering with physical evidence as charged in Count Three of the indictment.

to get the gun to his cousin's house." Iglesias did not see the gun. Graves' uncle, Winzy Graves, testified that, when Graves, Conner, Trey, and Iglesias arrived at his house after the shooting that none of them had a gun. And, when the police searched Winzy's house the following morning, they did not find a gun.

Graves claims that, other than Iglesias' testimony that Graves needed to get the gun to his cousin's house, there was no evidence that he removed the gun from the house or that he had attempted to "alter, destroy or conceal" the firearm by "secreting" it as alleged in the indictment. The evidence is sufficient to permit the jury to infer that Graves was, indeed, in possession of a firearm when he shot and killed Hollie. The firearm was never recovered. This fact, taken in conjunction with Iglesias' testimony that Graves indicated he needed to get the gun to his cousin's house, is sufficient to show that Graves concealed the firearm.

Part two of the sufficiency issue is whether Graves concealed the firearm with knowledge that an "investigation was pending or in progress" as alleged in the indictment. Here, we are faced with the issue of a variance between the indictment and the proof at trial. At trial, there was evidence indicating that Graves took the firearm used to shoot Hollie from the scene on the night (early morning) of the shooting. This occurred before the Fort Worth Police Department was aware that an offense had been committed. The police were not contacted until later that morning, when Sonia Hunt called 9-1-1 to report sighting a man, who appeared to be deceased, lying on the porch of Graves' home. This evidence cannot support the claim that Graves removed the firearm from the scene at a time when he knew an investigation was pending or in progress.

24

Detective Barron of the Fort Worth Police Department testified that, if a weapon was hidden from the Fort Worth Police Department after a shooting but before the investigation has begun, then he considers the gun hidden in contemplation of removing it from the investigation. This testimony does nothing to establish that the gun was removed while the investigation was pending or in progress. This testimony, however, is evidence that Graves, "knowing an offense has been committed," concealed the firearm "with intent to impair is verity, legibility, or availability as evidence in any *subsequent investigation* of or official proceeding related to the offense." *See* TEX. PENAL CODE ANN. § 37.09(d)(1) (West Supp. 2014) (emphasis added). Graves, however, was not indicted under Section 37.09(d).[9]

In addressing a claim of evidentiary sufficiency, we are to determine whether any rational jury could have found the essential elements of tampering with physical evidence beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 912. The essential elements of this offense are to be determined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular

---

[9]Section 37.09(d)(1) provides,

A person commits an offense if the person:

(1) knowing that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability *as evidence in any subsequent investigation* of or official proceeding related to the offense . . . .

TEX. PENAL CODE ANN. § 37.09(d)(1) (emphasis added).

25

offense for which the defendant was tried." *Id.* The law "as authorized by the indictment" includes "the statutory elements of the offense . . . as modified by the charging instrument." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). The hypothetically correct jury charge need not, however, incorporate allegations that give rise to immaterial variances. *Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001). Conversely, a material variance must be included within the hypothetically correct charge. *Id.* at 257. As explained by the Texas Court of Criminal Appeals in *Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012),

> A variance in pleading and proof can occur in two different ways. First, a variance can involve the statutory language that defines the offense. This can happen when a statute specifies alternate methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves, instead, an unpled method. For example, the retaliation statute makes it a crime to threaten a "witness" or "informant." The first type of variance occurs if the State pleads only "witness" in the charging instrument and proves only the unpled element of "informant" at trial. Second, a variance can involve a non-statutory allegation that is descriptive of the offense in some way. For example, the charging instrument pleads "Mary" as the victim, but the State proves "John" at trial. Or the charging instrument pleads the offense was committed with a knife, but the State proves at trial that a baseball bat was used.[10]

*Id.* at 294 (citations omitted).

Here, the variance between the pleading and the proof involves the statutory language that defines the offense and is, therefore, material. The language of Section 37.09(a) defines one means of committing the offense of tampering with physical evidence as altering, destroying, or concealing anything with the intent to impair its availability as evidence in an investigation, with

---

[10]In *Johnson*, the variance was of the second type, a nonstatutory allegation. There, Johnson was charged with having committed aggravated assault by intentionally or knowingly causing serious bodily injury by hitting the victim with his hand or by twisting her arm with his hand. The victim testified that Johnson threw her against a wall, which caused her serious bodily injury. The court held that the variance involved a nonstatutory type of allegation. *Johnson*, 364 S.W.3d at 298.

knowledge that an investigation is pending or in progress. TEX. PENAL CODE ANN. § 37.09(a) (West Supp. 2014). Section 37.09(d) defines another means of committing the offense of tampering with physical evidence as altering, destroying, or concealing anything, knowing that an offense has been committed, with the intent to impair its availability as evidence in any subsequent investigation. TEX. PENAL CODE ANN. § 37.09(d)(1). Section 37.09 proscribes several different methods of tampering with physical evidence. The State alleged only one specific means of tampering with physical evidence—secreting the firearm with knowledge of a pending or current investigation and with the intent to impair its verity or availability as evidence in the investigation. In sum, Graves was indicted for a single offense of tampering with physical evidence, and the State alleged he committed this offense in one specific way. In a variance situation, "the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Gollihar*, 46 S.W.3d at 246; *see, e.g.*, *Rabb v. State*, 434 S.W.3d 613, 617–18 (Tex. Crim. App. 2014) (conviction reversed because State pled one statutory alternative for conduct element of tampering but proved another statutory alternative); *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.— Houston [1st Dist.] 2004, pet. ref'd) (evidence insufficient to sustain tampering conviction when indictment alleged investigation was in progress and only investigation in progress at time was traffic stop).

In *Geick v. State*, 349 S.W.3d 542, 547–48 (Tex. Crim. App. 2011), the court determined that when pled in an indictment, a statutory definition becomes an element of the offense that the State must prove. In that case, Geick was indicted for theft of a bulldozer by deception. The

27

jury charge allowed for a conviction without limiting the manner in which the theft was committed, and Geick was found guilty "as charged in the indictment." *Id.* at 544. On appeal, the Fourteenth Court of Appeals acquitted Geick because there was no evidence of deception. The Texas Court of Criminal Appeals affirmed, holding that, "when a statute lays out several alternative methods of committing the offense, and the indictment alleges only one of those methods, 'the law as authorized by the indictment' is limited to the method specified in the indictment." *Id.* at 545 (citing *Gollihar*, 46 S.W.3d at 254–55); *see also Cada v. State*, 334 S.W.3d 766 (Tex. Crim. App. 2011) ("Under *Jackson*, the State must prove the statutory elements that it has chosen to allege, not some other alternative statutory elements that it did not allege.").

Here, the State was not required to plead that the firearm was secreted with knowledge that an investigation was pending or in progress. Having done so, however, "the law as authorized by the indictment" is limited to the method specified in the indictment. *Geick*, 349 S.W.3d at 545. Accordingly, the State was required to prove, beyond a reasonable doubt, that Graves secreted the firearm knowing an investigation was pending or in progress and with the intent to impair its verity or availability. The State failed in this task. We find that the evidence is legally insufficient to support the conviction of tampering with physical evidence.

28

## VII.    Conclusion

We affirm the trial court's judgment related to Graves' murder conviction.  Because the evidence is legally insufficient to support the judgment of conviction for tampering with physical evidence, we reverse that judgment and render a judgment of acquittal.


Jack Carter
Justice

Date Submitted:    October 14, 2014
Date Decided:    December 11, 2014

Publish