ACCEPTED
03-14-00570-CR
6513849
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/17/2015 12:00:00 AM
JEFFREY D. KYLE
CLERK

No. 03-14-00570-CR

## IN THE COURT OF APPEALS
## THIRD DISTRICT
## AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/17/2015 2:22:11 PM
JEFFREY D. KYLE
Clerk

**ERIC BYRON CRAYTON, Appellant**

*v.*

**THE STATE OF TEXAS**

## ON APPEAL FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
## TRIAL COURT CAUSE NUMBER CR2012-225

## REPLY BRIEF FOR APPELLANT

**Richard E. Wetzel**
**State Bar No. 21236300**

**1411 West Ave., Suite 100**
**Austin, Texas 78701**

**(512) 469-7943**
**(512) 474-5594**
**wetzel_law@1411west.com**

**Attorney for Appellant**
**Eric Byron Crayton**

# Table of Contents

**Page**

Table of Contents . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . iii

Statement of the Case . . . . . . . . . . . . . . . . 1

Reply Point of Error One . . . . . . . . . . . . . . . . 1

The trial court abused its discretion by admitting Crayton's recorded statement which does not comply with TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2) (Supp. CR 5, 4 RR 146).

Reply Point of Error Two . . . . . . . . . . . . . . . . 1

The trial court abused its discretion by admitting Crayton's recorded statement which was obtained after an officer repeatedly ignored Crayton's attempt to terminate the interview and invoke his right to remain silent (Supp. CR 5, 4 RR 146).

Reply Point of Error Three . . . . . . . . . . . . . . . . 11

The evidence is insufficient to prove Crayton tampered with evidence with knowledge an investigation was pending, in progress, or that an offense had been committed.

Reply Point of Error Four . . . . . . . . . . . . . . . . 15

The state failed to produce independent evidence to corroborate Crayton's extrajudicial statement that he tampered with physical evidence.

Prayer . . . . . . . . . . . . . . . . 18

Certificate of Compliance . . . . . . . . . . . . . . . . 19

Certificate of Service . . . . . . . . . . . . . . . . 19

ii

# Index of Authorities

**Page**

**Cases**

*Almaguer v. State*, ___ S.W.3d ___, 2014 WL 5088386
(Tex. App.—Corpus Christi 2014, pet. ref'd) . . . . . . . . . . . . . 4

*Bible v. State*, 162 S.W.3d 234
(Tex. Crim. App. 2005) . . . . . . . . . . . . . . 4

*Graves v. State*, 452 S.W.3d 907
(Tex. App.—Texarkana 2014, pet. ref'd) . . . . . . . . . . . . 13

*Jackson v. Virginia,* 443 U.S. 307
(1979) . . . . . . . . . . . . . 14

*Lumpkin v. State*, 129 S.W.3d 659
(Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) . . . . . . . . . . . . 12

*Miller v. State*, 457 S.W.3d 919
(Tex. Crim. App. 2015) . . . . . . . . . . . . 17

*Miranda v. Arizona,* 384 U.S. 436
(1966) . . . . . . . . . . . . . 10

*Pannell v. State*, 7 S.W.3d 222
(Tex. App.—Dallas 1999, pet. ref'd) . . . . . . . . . . . . 12

*Ramos v. State,* 245 S.W.3d 410
(Tex. Crim. App. 2008) . . . . . . . . . . . . . . 9

*Stairhime v. State*, ___ S.W.3d ___, 2015 WL 3988925
(Tex. Crim. App. 2015) . . . . . . . . . . . . . . 4

*Thomas v. State*, 408 S.W.3d 877
(Tex. Crim. App. 2013) . . . . . . . . . . . . . . 4

*Watson v. State,* 762 S.W.2d 591
(Tex. Crim. App. 1988) . . . . . . . . . . . . . 10

**Statutes**

TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2) . . . . . . . . . . . . . . 1

TEX. PEN. CODE § 1.07(a)(22)(A) . . . . . . . . . . . . 14

TEX. PEN. CODE § 6.03(b) . . . . . . . . . . . . 15

TEX. PEN. CODE § 9.02 . . . . . . . . . . . . 14

TEX. PEN. CODE § 9.31 . . . . . . . . . . . . 14

TEX. PEN. CODE § 9.32 . . . . . . . . . . . . 14

TEX. PEN. CODE § 37.09(a)(1) . . . . . . . . . . . . 11

TEX. PEN. CODE § 37.09(d)(1) . . . . . . . . . . . . 11

**Rules**

TEX. R. APP. P. 9.4 . . . . . . . . . . . . 19

TEX. R. APP. P. 38.3 . . . . . . . . . . . . . . 1

TEX. R. APP. P. 38.6(e) . . . . . . . . . . . . . . 1

**Other**

W. LaFave, et. al., *Criminal Procedure* § 6.9(f) (3d ed. 2007) . . . . . . . . . . . . . . 9

## Statement of the Case

This is an appeal from a criminal proceeding. Eric Byron Crayton timely filed his opening brief on February 2, 2015. The appeal was abated and remanded to the trial court due to a dispute concerning the record on July 2, 2015. Following the resolution of that dispute, the appeal was reinstated on July 29, 2015. The State's brief was timely filed on July 29, 2015. Within 20 days of the State's brief being filed, Crayton now files his reply brief. See TEX. R. APP. P. 38.3 and TEX. R. APP. P. 38.6(e).

## Reply Point of Error One

**The trial court abused its discretion by admitting Crayton's recorded statement which does not comply with TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2) (Supp. CR 5, 4 RR 146).**

## Reply Point of Error Two

**The trial court abused its discretion by admitting Crayton's recorded statement which was obtained after an officer repeatedly ignored Crayton's attempt to terminate the interview and invoke his right to remain silent (Supp. CR 5, 4 RR 146).**

- 1 -

**The State's Claim of Waiver**

At the outset, the State argues Crayton has waived the instant claims because counsel at trial stated "no objection" when the complained exhibit was offered into evidence (State's brief at 16, 30). The State claims the exhibit was no longer objectionable to defense counsel due to a number of "defense friendly redactions" ordered by the trial court (State's brief at 18, 31).

The content of the "defense friendly redactions" is not specified by the State. However, the record does reflects that even in view of the redactions, the exhibit still contains the following incriminating statements by Crayton at the designated times: 15:23 admission he went to the scene of the stabbing; 15:45 I poked him with a knife; 15:56 I poked him once in the stomach; 16:31 stabbed him after being hit and knocked to the ground; 16:52 I got rid of the knife, on the road, I threw it away; 17:00 I threw it on the road on Sorrell Creek; 17:22 I freaked out and wanted to get rid of the knife; 17:35 I probably shouldn't have stabbed him – there was a little fault there; 18:40 falsely stating the nature of the knife as a folding knife rather than a sheath knife; 19:43 I have already fucked myself; 23:05 challenges to the location and evidence of injuries allegedly inflicted by Kitto to

Crayton's face; and 24:05 Sorrell Creek, that's where I threw the knife (3 Supp. RR SX 73).[1]

Crayton concedes counsel stated "no objection" when the complained of evidence was introduced at trial (4 RR 146). Viewed in context, the statement of "no objection" did not waive the claims now presented. During the suppression hearing, Crayton made clear he sought to preserve the confession question at trial before the jury (2 Supp. RR 39). Crayton engaged in vigorous cross-examination of Deputy Ward in relation to his deficiencies in the investigation process (4 RR 157-180, 5 RR 8-51 and 71-97). In argument to the jury, counsel noted the deficiencies in the investigation conducted by Ward (6 RR 31-34, 41, and 44).

Finally, as noted above, even as redacted, the admitted exhibit contained a number of incriminating and harmful statements by Crayton. No sound reason is apparent from the record which would support the notion counsel, at a critical point in trial, suddenly changed course, had no objection to clearly harmful evidence against his client, and chose to abandon his previously voiced objections.

---

[1] There are two supplemental reporter's record volumes three in this case. The first is an exhibit volume filed in this Court on January 15, 2015, concerning the motion to suppress heard in the trial court on February 18, 2014. The second supplemental reporter's record volume three is an exhibit volume filed in this Court on July 27, 2015, concerning the hearing on the record dispute before the trial court on July 15, 2015. The reference to "3 Supp. RR" is a reference to the second such record filed in this cause.

Likewise, there is nothing to indicate the trial court have believed Crayton sought to abandon his previously voice objections to State's Exhibit 73.

This Court should address the merits of the points presented because the record as a whole plainly demonstrates that Crayton did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal relative to the denial of his motion to suppress the recording. *See Stairhime v. State*, ___ S.W.3d ___, 2015 WL 3988925, at *4 (Tex. Crim. App. 2015) (finding no waiver of challenge despite affirmative statement of "no objection" by counsel at trial); *Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013) (same); *Almaguer v. State*, ___ S.W.3d ___, 2014 WL 5088386, at *8 (Tex. App.—Corpus Christi 2014, pet. ref'd) (same).

## The TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2) Violation

Here, Crayton argues Ward's entire interrogation should have been suppressed because the warnings required under 38.22 are not contained within PT SEX 6 or SEX 73 (3 Supp. RR PT SEX 6, SEX 73). Although the required warnings are included in Campbell's interrogation, PT SEX 1, that will not suffice to satisfy 38.22 (3 Supp. RR PT SEX 1).

When there are two distinct recordings, and the later does not include 38.22 warnings, courts apply the following analysis to determine whether the interview constitutes separate interviews or but the continuation of a single interview: (1) the passage of time; (2) whether the interrogation was conducted by a different person: (3) whether the interrogation related to a different offense; and (4) whether the officer asked the defendant if he had received any earlier warnings, whether he remembered those warnings, and whether he wished to waive or invoke his rights. *Bible v. State*, 162 S.W.3d 234, 242 (Tex. Crim. App. 2005).

In the case at bar, while the passage of time between the end of the first audiotape interview and the beginning of the videotaped interview in question, PT SEX 6, is approximately 45 minutes, this must be coupled with Crayton's state of intoxication at the time that the 38.22 warnings were given to him. The State argues the record contains no facts supporting the assertion Crayton was intoxicated during his interrogation by Campbell and Ward (State's brief at 22). Crayton disagrees with the State's characterization of the record. Both pretrial and at trial, Campbell conceded Crayton was intoxicated during the interrogation (2 Supp. RR 28, 4 RR 131). Campbell related that he has known Crayton several years and he is always drunk (2 Supp. RR 28). During the interrogation, Crayton told Campbell that he was drunk (2 Supp. RR 30). At pretrial, Ward stated that

- 5 -

Crayton had been drinking and was intoxicated at the time of the interrogation (2 Supp. RR 42).

Crayton maintains the Court should consider his level of intoxication when considering the first *Bible* factor. Crayton was intoxicated when he initially received his warnings from Campbell and then fell asleep before Ward commenced to interrogate him 45 minutes later without the benefit of receiving his required warnings. The first Bible factor weighs in support of suppression.

The second *Bible* factor, whether the interrogation was conducted by a different person, also weighs in favor of suppression. The State argues Campbell's session with Crayton was not interrogation because he was merely "babysitting" Crayton pending the arrival of Ward (State's brief at 24). Actually, the record reflects Campbell was not simply a passive "babysitter" for Crayton. His 40 minute recorded conversation with Crayton before the arrival of Ward reflects the following questioning at designated times: 9:15 what happened tonight; 19:50 anything else going on tonight; 21:40 questions on resisting arrest charge with Deputy Koepp; 27:15 questions on resisting arrest charge; and 37:55 questions on resisting arrest (3 Supp. RR PT SEX 1). Campbell conducted the first interview of Crayton regarding his resisting arrest charge and Ward them conducted the

challenged second unwarned interview of Crayton concerning the stabbing of Kitto.

The State further argues the two recordings with Campbell and Ward were but a single interview (State's brief at 24). Crayton does not agree as the record reflects separate interviews on separate subjects by separate officers. At the pretrial suppression hearing, Deputy Campbell agreed there were two different recordings (2 Supp. RR 25). This factor weighs in favor of suppression for the statutory violation.

The third *Bible* factor, whether the interrogation related to a different offense, also weighs in favor of suppression. The State continues its refrain that Campbell was merely a "babysitter" and did not interrogate Crayton (State's brief at 25). Crayton disagrees for the reasons mentioned under the second *Bible* factor. Campbell questioned Crayton regarding his evading arrest charge stemming from his conduct at the time he was apprehended. Ward, on the other hand, focused exclusively on the charges of murder and tampering with physical evidence.

The final *Bible* factor also weighs in favor of suppression. The State argues there was no need for Ward to warn Crayton on the recording because Crayton had previously received his warnings from Campbell (State's brief at 26). The State's claim finds no support and contrary to the statutory directive that the warnings be

recorded in the statement sought to be offered into evidence. Without question, Ward never asked Crayton if he had received any warnings earlier, whether he remembered those warnings, and whether he wished to waive or invoke his rights. Rather than complying with the law, Ward woke up the intoxicated Crayton and commenced to interrogate him on wholly new offenses without the required warnings being recorded on the videotape of SEX 6 and SEX 73.

Apparently conceding the issue of harm if error is present, the State does not address Crayton's harm analysis. Crayton continues to rely on the harm analysis set forth in his opening brief with regard to the first point of error.

**Deputy Ward ignored Crayton's attempt to terminate the interview and invoke his right to remain silent.**

As played for the jury, the interrogation of Crayton by Ward includes the following efforts to terminate the interview at the designated times: 19:30 in response to Ward's assertion "you're making this difficult on me" Crayton responds "you're right. I'm done with this ... I'm done with this; 19:38 I'm done; 19;43 I'm done because I have already fucked myself; 22:15 just take me to my cell; 22:17 responding "no" to Ward's request to talk for a minute; 23:36 I don't want to talk; 23:42 I'm done man; and 25:49 don't talk to me – just take me to my

cell (3 Supp. RR SEX 73). The trial court determined the jury would not be allowed to hear anything after the 25:49 point on the recording.

Ward related at the suppression hearing that despite Crayton's repeated assertions of "I'm done, take me to my cell, quit talking to me, and I'm not talking to you," he continued the interrogation because that is what he had been taught in interrogation training (2 Supp. RR 46). He did not believe Crayton's reluctance to participate in the interrogation had any significance because Crayton continued to answer questions put to him even after saying he was done, quit talking to me, take me to my cell, and I'm not talking to you (2 Supp. RR 49-50).

The State argues Crayton's attempts to invoke his right to silence and terminate the interview were ambiguous and not binding on Deputy Ward (State's brief at 34). The State maintains Crayton's assertions of being "done" could have simply meant he was finished discussing a particular subject, but was willing to answer questions in another area (State's brief at 39). Crayton disagrees.

Invocation of the right to terminate an interview need not include any magic words. *See Ramos v. State,* 245 S.W.3d 410, 418 (Tex. Crim. App. 2008). Any declaration of a desire to terminate the contact should suffice. *Id.* (citing W. LaFave, et. al., *Criminal Procedure* § 6.9(f) at 853 (3d ed. 2007).

Especially troubling is Ward's testimony that he was free to ignore Crayton's invocation of his rights to remain silent and terminate the interview. Apparently Ward has been taught that despite invocation of rights by a suspect, he is free to continue interrogation until the accused physically refuses to speak any further. Such a practice is directly contrary to both Federal and State law. *See Miranda v. Arizona,* 384 U.S. 436, 474 (1966) (holding that if an individual indicates in any manner at any time before or during questioning that he wishes to remain silent, the interrogation must cease); and *Watson v. State,* 762 S.W.2d 591, 596 (Tex. Crim. App. 1988) (same). This Court should not sanction such blatant disregard of constitutional rights.

Under the totality of the circumstances, a reasonable officer would understand Crayton's statements concerning "being done" constituted a clear unambiguous attempt to end the interview and invoke his right to remain silent. Under de novo review, this Court should find the trial court abused its discretion in admitting into evidence anything on the videotape after the point Crayton invoked his right to terminate questioning.

Apparently conceding the issue of harm if error is present, the State does not address Crayton's harm analysis. Crayton continues to rely on the harm analysis set forth in his opening brief with regard to the second point of error.

- 10 -

**The evidence is insufficient to prove Crayton tampered with evidence with knowledge an investigation was pending, in progress, or that an offense had been committed.**

The two paragraph tampering with evidence count alleges Crayton tampered with a knife on January 19, 2012, while knowing an investigation was pending, in progress, or an offense had been committed (CR 8). *See* TEX. PEN. CODE §§ 37.09(a)(1) and 37.09(d)(1). Both statutory theories were submitted to the jury (CR 108). In voir dire, the State mentioned the jury would not be required to unanimously agree on a particular statutory theory in order to convict Crayton of tampering with physical evidence (2 RR 146). By this point of error, Crayton maintains the evidence presented at trial was insufficient to prove he had knowledge an investigation was pending, in progress, or that an offense had been committed at the time he tampered with the knife.

The evidence at trial showed Young approached Kitto as he took his shirt off and she saw he had a wound to his chest (3 RR 73). Young screamed at Crayton and he left the scene in his vehicle (3 RR 74). The knife used to stab Kitto was not recovered at the scene (4 RR 115).

The tampering with physical evidence statute requires the defendant be aware that the thing he altered, destroyed, or concealed was evidence in the investigation as it existed at the time of the alteration, destruction, or concealment. *Pannell v. State*, 7 S.W.3d 222, 223 (Tex. App.—Dallas 1999, pet. ref'd). The term pending in the tampering-with-evidence statute means impending, or about to take place. *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

The State asserts that the conduct of fleeing the scene as bystanders tried to flag him down, running from Deputy Koepp when he was pulled over, lying about going to the Canyon Falls RV Park and telling Sergeant Ward that he used the knife to stab the victim are all items of evidence that tend to indicate the Crayton knew an investigation into his stabbing of Kitto was pending or in progress (State's brief at 46-47).

The problem with the State's analysis is that it fails to focus on the alleged tampering event of disposal of the knife and instead relies on events occurring long after the alleged tampering took place. The critical inquiry is whether Crayton was shown to have knowledge of a pending investigation at the time the knife was disposed. Post disposal events are not relevant to or probative of Crayton's state of mind at the time of the alleged tampering.

Crayton relies on *Graves v. State*, 452 S.W.3d 907 (Tex. App.—Texarkana 2014, pet. ref'd). There, the evidence showed the defendant took a pistol from the scene of a shooting before the police were notified of the incident. Finding the evidence insufficient to prove tampering with knowledge an investigation was pending or in progress, the Court concluded the evidence did not support the claim that Graves removed the firearm from the scene at a time when he knew an investigation was pending or in progress. *Graves*, 452 S.W.3d at 922. The State does not acknowledge or discuss *Graves* in its brief.

As in *Graves*, Crayton left the scene with the knife before the authorities were notified of Kitto's stabbing. He claimed to have thrown the knife in a creek. There is no showing of when that act occurred in relation to an investigation in progress or pending. The evidence does not support the theory that Crayton knew an investigation was pending or in progress at the time he tampered with the knife. An acquittal is warranted due to insufficient evidence.

The State concedes it had the burden to show Crayton knew an offense had been committed at the time he tampered with the knife (State's brief at 47). The State argues that conceivably, the jury could have concluded that Crayton committed the offenses of manslaughter, assault with a deadly weapon, or even simple assault, any of which would have allowed for a conviction on tampering

- 13 -

with physical evidence in the absence of guilty on the charge of murder (State's brief at 47-48).

The sufficiency of the evidence to support a conviction cannot rest on speculation or possibilities of what a jury found. The issue is whether sufficient evidence was presented at trial upon which a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

A careful review of the evidence at trial shows it insufficient to prove Crayton knew an offense had been committed at the time he tampered with the knife. The undisputed evidence at trial was that Kitto had been the aggressor and Crayton had done nothing to warrant Kitto's attack. The defensive theory throughout was based on the justifications of self-defense and deadly force in defense of a person. Those justifications were included in the court's charge and argued by counsel in seeking an acquittal. The jury responded by finding Crayton not guilty of the offense of murder as charged in the first count of the indictment.

It is not an offense to use self-defense or deadly force in defense of a person. Those justifications are a defense to an offense. TEX. PEN. CODE §§ 9.02, 9.31, and 9.32. The justifications undermine the forbidden conduct as an element of an offense. *See* TEX. PEN. CODE § 1.07(a)(22)(A). In order to prove knowledge with

respect to the nature of his conduct, it was incumbent on the State to prove the circumstances were such that Crayton was aware he had committed an offense when he tampered with the knife. *See* TEX. PEN. CODE § 6.03(b). The use of lawful force to defend himself from Kitto's unlawful attack did not constitute an offense of which Crayton should have been aware.

Crayton maintains the facts presented at trial do not show he had knowledge that an offense had been committed at the time he tampered with the knife. The jury's finding to the contrary is not a rational finding. A judgment of acquittal is warranted due to the insufficiency of the evidence presented at trial.

### Reply Point of Error Four

**The state failed to produce independent evidence to corroborate Crayton's extrajudicial statement that he altered, concealed, or destroyed the knife.**

The two paragraph tampering with evidence count alleges Crayton tampered with a knife on January 19, 2012, while knowing an investigation was pending, in progress, or offense had been committed (CR 8). Specifically, Crayton was charged with tampering with the knife by acts which tended to destroy, alter, or conceal it (CR 8). This point of error complains of the State's failure to corroborate Crayton's statement that he tampered with the knife by throwing it in a creek.

Deputy Rex Campbell, of the Comal County Sheriff's Office, went to the scene of Kitto's stabbing and was unable to locate the knife used to stab him (4 RR 115). Deputy Tommy Ward, of the Comal County Sheriff's Office, assisted in the investigation (4 RR 139). On January 19, 2012, he interviewed Crayton at the Sheriff's Office after Campbell had spoken with him (4 RR 143). His interview of Crayton was recorded and played for the jury (4 RR 146, 8 RR SEX 73). As played for the jury, the interview contains the following statement by Crayton to Ward at the designated time: 16:52 I threw the knife away on the road; 17:00 threw the knife on the road on Sorrell Creek; and 24:05 Sorrell Creek, that's where I threw the knife (3 Supp. RR SEX 73).

Ward executed a search warrant at Crayton's home and was unable to find the knife used to kill Kitto (4 RR 148). He did find some bloody clothing at Crayton's home (4 RR 150). Ward additionally executed a search warrant on the truck Crayton drove at the time of the stabbing and his apprehension (4 RR 150). After speaking with Crayton, Ward searched Sorrell Creek on two occasions, but was unable to locate the knife used in the incident involving Kitto (4 RR 148-149).

The State argues Crayton's extra-judicial confession was adequately corroborated to satisfy the corpus delicti rule (State's brief at 54-57). The State maintains the rule was satisfied by trial evidence showing Crayton engaged in

criminal conduct by stabbing Kitto (State's brief at 55). The State further argues the rule was satisfied upon a showing of the closely related crime of Kitto's murder by Crayton (State's brief at 57).

While Texas law does recognize a closely related crimes exception to strict application of the corpus delicti rule, the exception applies only when the temporal relationship between the offenses is sufficiently proximate that introduction of the extrajudicial confession does not violate the policies underlying the corpus delicti rule. *Miller v. State*, 457 S.W.3d 919, 927 (Tex. Crim. App. 2015). By the very language of the exception, it is only applicable upon showing of multiple offenses. The result of instant trial was a jury finding of a single offense rather than multiple offenses.

Crayton was charged with the offense of murder in two paragraphs, both of which alleged the stabbing death of Kitto with a knife by Crayton (CR 8). The jury ultimately returned a general verdict finding Crayton not guilty of the offense of murder as alleged in the indictment (6 RR 75).

The State's arguments in this point are premised on the assertion the evidence shows Crayton engaged in criminal conduct in relation to the death of Kitto. The jury thought otherwise.

Crayton responds that he was acquitted of the alleged criminal conduct upon which the State now relies when the jury returned a general verdict of "not guilty" to the alleged conduct of stabbing Kitto. Conduct for which the accused has been acquitted is not criminal conduct. The State cites no authority that innocent conduct is sufficient to satisfy the corpus delicti rule.

In this case, there is no evidence independent of Crayton's statement to show he tampered with the knife or the offense of tampering with physical evidence was committed. The only thing shown by the independent evidence is that the authorities were unable to locate the knife. An inability to locate the knife should not be sufficient to independently show commission of the offense of tampering with physical evidence through concealment, destruction, or alteration.

**Prayer**

Crayton prays this Court will reverse the judgment of conviction and enter a judgment of acquittal, reverse the judgment and remand for a new trial, or enter any other relief appropriate under the facts and the law.

Respectfully submitted,

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300

- 18 -

1411 West Avenue
Suite 100
Austin, TX 78701

(512) 469-7943
(512) 474-5594 – facsimile
wetzel_law@1411west.com

Attorney for Appellant
Eric Byron Crayton

## Certificate of Compliance

This pleading complies with TEX. R. APP. P. 9.4. According to the word count function of the computer program used to prepare the document, the brief contains 3,841 words excluding the items not to be included within the word count limit.

/s/ Richard E. Wetzel

Richard E. Wetzel
State Bar No. 21236300

## Certificate of Service

I, Richard E. Wetzel, counsel for appellant, do hereby certify that a true and correct copy of the foregoing document was emailed to counsel for the State, Clayten Hearrell, Assistant Criminal District Attorney, at his email address, hearrc@co.comal.tx.us on this the 15th day of August, 2015.

/s/ Richard E. Wetzel

Richard E. Wetzel
State Bar No. 21236300

- 19 -