**Opinion issued January 29, 2019**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-17-00788-CR**

———————————

**GMARKOUS WILSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 78823-CR**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Gmarkous Wilson, of murder, found three enhancement paragraphs true, and the trial court assessed his punishment at 60 years' confinement. In two issues, appellant contends that (1) the evidence is legally

insufficient to support his conviction, and (2) the trial court erred by including a charge allowing the jury to convict him as a party to the offense. We affirm.

## BACKGROUND

The facts in the light most favorable to the verdict are as follows. On April 6, 2016, appellant's black Malibu sedan and a white Crown Victoria sedan with two men inside, were seen parked outside the complainant's home. The complainant, Curtis Arvik, came home to find his house being burglarized and saw two men run out of his home. The three burglars escaped in the Crown Victoria and the Malibu, and Arvik gave chase in his red Nissan Titan truck. The white Crown Victoria slid into a ditch, and Arvik forced the black Malibu into the ditch with his truck. The two men from the white Crown Victoria fled the scene. At this time, Arvik got out of his truck and walked towards the ditch as appellant tried in vain to drive his Malibu out of the ditch.

Arvik proceeded to confront appellant, and the two began "wrestling" or "tussling" until suddenly, Arvik stepped back and threw his hands up. Within seconds, appellant fired two gunshots at Arvik, who fell into the ditch. Appellant backed away from the scene while still shooting, got into Arvik's red truck, and drove away. Arvik's neighbor, Charles Terry, found Arvik in the ditch "laying over on his stomach" and "breathing really hard."

John Johnston, whose vehicle was parallel to Arviks's red truck when it stopped, testified that he saw Arvik and appellant wrestle one another; saw Arvik step back and throw his hands up; saw appellant make a move; and then "the gun came out." Within seconds, Johnston heard gunshots, saw Arvik stumble and fall into the ditch, and saw appellant get in the red truck and drive away. Issac Schiel and his mother, Sherry Schiel, testified that they too saw a man [Arvik] get out of the red truck; saw appellant with a black pistol in his hand; saw the man from the truck step back and put his hands up; and saw two men lock bodies, "wrestling" or "tussling." The Schiels heard gunshots and saw appellant jump out of the ditch, run to the red truck, and drive off. Terry testified that he also saw appellant back away while shooting at Arvik, get in the red truck, and drive away.

Although none of these eyewitnesses identified appellant as the shooter, Deputy McDonald testified that, once he arrived on the scene, he gave chase to the suspect leaving in Arvik's red Nissan truck and identified appellant as the person he took into custody. He also saw appellant drop a black pistol out of the driver's side window of the red truck. A magazine fitting the pistol was found on the floorboard of the red truck appellant had been driving, and the Malibu at the scene had appellant's fingerprints and DNA on the steering wheel and appellant's cell phone was found in the car.

3

The State also presented evidence that police found two fired cartridges matching the type of pistol appellant dropped on the road. The State also performed a gunshot residue test on appellant's hand, which showed gunshot primer residue particles on his hands. The presence of the particles is consistent with appellant either firing a gun, being in immediate proximity of a weapon that was being discharged or touching a surface that already had gunshot primer residue present on it.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant challenges the sufficiency of the evidence to support his criminal conviction, arguing that the evidence supported his claim of self-defense.

### *Standard of Review*

In reviewing the legal sufficiency of the evidence to support a criminal conviction, a court of appeals determines whether, after viewing the evidence in the light most favorable to the verdict, the trier of fact was rationally justified in finding the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We measure the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury

4

charge is one that at least "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 1991).

As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. On appeal, we may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In reviewing the evidence, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to make reasonable inferences from circumstantial evidence presented at trial. *Id.*

A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual," or if he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an

individual." TEX. PENAL CODE ANN. § 19.02(b)(1), (b)(2); *see Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

*Analysis*

Here, the evidence was sufficient to support appellant's conviction for murder. First, three eyewitnesses saw a man matching appellant's description exit a Malibu vehicle, shoot Arvik, and escape in Arvik's damaged red truck. One eyewitness saw appellant backing away while shooting at Arvik and then getting into Arvik's truck. The same eyewitness also found Arvik lying in a ditch on his stomach and "breathing really hard." In addition, a deputy who gave chase to the suspect fleeing in Arvik's red truck identified appellant as the suspect he took into custody. The deputy also saw appellant drop a black pistol out of the driver's window. A magazine fitting the pistol was found on the floorboard of the truck appellant was driving when arrested. Lastly, the Malibu from which the suspect fled, had appellant's fingerprints, DNA, and cell phone in it.

Other evidence supporting appellant's guilt for Arvik's murder include two fired cartridges that matched the pistol appellant dropped on the road, and a gunshot residue test performed on the appellant's hand showing gunshot primer residue particles on his hands. The presence of the particles would be consistent with appellant either firing a gun, being in immediate proximity of a weapon that was

6

being discharged or touching a surface that already had gunshot primer residue present on it.

Appellant raised, and the jury was charged, on the law of self-defense. Appellant contends that he reasonably believed, as viewed from his standpoint alone, that deadly force was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by Arvik. Self-defense may be raised against a charge of murder as justification for a defendant's actions and in support of an acquittal. *See, e.g.*, TEX. PENAL CODE ANN. §§ 9.31–.33; *Alonzo v. State*, 353 S.W.3d 778, 781–82 (Tex. Crim. App. 2011). "A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force . . . ." TEX. PENAL CODE ANN. § 9.31(a). Similarly, a "person is justified in using deadly force against another . . . when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a)(2); *see Smith*, 355 S.W.3d at 145.

In a claim of self-defense, "a defendant bears the burden of production," while "the State . . . bears the burden of persuasion to disprove the raised defense." *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). The defendant's burden of production requires him to adduce some evidence that would support a rational jury

7

finding in his favor on the defensive issue. *See Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). By contrast, the State's "burden of persuasion is not one that requires the production of evidence; it requires only that the State prove its case beyond a reasonable doubt." *Zuliani*, 97 S.W.3d at 594 (citing *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991)). A determination of guilt by the fact-finder implies a finding against the defensive theory. *Id.* The issue of self-defense is a fact issue to be determined by the jury, who is free to accept or reject the defensive issue. *Saxton*, 804 S.W.2d at 913–14.

Here, the jury had sufficient evidence to reject appellant's claim of self-defense. Three eyewitnesses saw appellant and Arvik "wrestling" or "tussling," saw Arvik step back and throw his hands up, and saw a gun in appellant's hands. Within seconds, the eyewitnesses heard gunshots. Two of the witnesses saw Arvik stumble and fall into the ditch. All three witnesses saw appellant run to the red truck and drive away. Appellant was not entitled to use a deadly force against an unarmed man who had surrendered himself by throwing his hands up and backing away from the conflict. *See Graves v. State*, 452 S.W.3d 907, 911 (Tex. App.—Texarkana 2014, pet. ref'd) (finding no evidence of self-defense when initial aggressor was shot only after he was in the process of backing away from defendant); *Sanchez v. State*, 418 S.W.3d 302, 310 (Tex. App.—Fort Worth 2013, pet. ref'd) (finding defendant "acted out of anger, not protective instinct, in pursuing the unarmed [complainant]").

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that "any rational trier of fact . . . would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914; *see also* TEX. PENAL CODE ANN. § 9.32(a). We hold that the evidence is legally sufficient to support appellant's conviction.

Accordingly, we overrule issue one.

### PARTIES CHARGE

In issue two, appellant contends the trial court erred by including, over his objection, a jury charge that allowed the jury to convict him as a party to the offense. Specifically, appellant claims that "the trial court erred in instructing the jury on the law of parties because there is no evidence that he or [the driver of the white Crown Victoria] ever communicated, assisted, or encouraged the other to commit a crime."

### *Standard of Review and Applicable Law*

A review of alleged jury-charge error is a two-step process. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). First, we must determine whether error exists in the charge. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). Second, if there is error, the court must determine whether the error caused sufficient harm to require reversal of the conviction. *Id.* Given that appellant objected to the inclusion of the parties instruction, reversal is required only when the record, when viewed as

9

a whole, illustrates that the defendant suffered some actual, rather than theoretical, harm from the error. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a). A person is "criminally responsible" for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). "In general, an instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999).

*Analysis*

Because sufficient evidence supports appellant's guilt as a principal actor, any error in submitting the parties instruction was harmless. *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986) ("Where the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of the parties is harmless."). "In other words," if "there was no evidence tending to show appellant's guilt as a party, the jury almost certainly did not rely upon the

10

parties instruction in arriving at its verdict, but rather" would have "based the verdict on the evidence tending to show appellant's guilt as a principal actor." *Ladd*, 3 S.W.3d at 565. "[B]ecause there existed no evidence that anyone else killed the decedent, the record cannot support the conclusion that appellant must have suffered some actual, as opposed to theoretical, harm as required by *Almanza* and *Arline*." *Miles v. State*, No. 07-02-0108-CR, 2003 WL 1914398, at *2 (Tex. App.—Amarillo Apr. 22, 2003, pet. ref'd) (mem. op., not designated for publication); *see also Saavedra v. State*, No. 01-17-00295-CR, 2018 WL 3581081, at *6 (Tex. App.—Houston [1st Dist.] July 26, 2018, pet. ref'd) (mem. op., not designated for publication) (holding that, "because there is . . . sufficient evidence to support appellant's guilt as a principal actor, any error in submitting the parties instruction would have been harmless").

Because the evidence showed that appellant shot the complainant, and there was no evidence indicating that anyone shot the complainant, appellant was not harmed by the submission of a parties charge.

We overrule issue two.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b)